IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) BRANDON L. KOLLN<br><br>    Plaintiff,<br><br>vs.<br><br>1) RAIL BARGE TRUCK SERVICES,<br>INC., a Kentucky corporation<br><br>    Defendant. | Case No. CIV-14-858-D |

## PLAINTIFF BRANDON KOLLN'S ORIGINAL COMPLAINT

Plaintiff Brandon Kolln ("Kolln"), by and through his undersigned counsel, files his Original Complaint as follows:

### I. PARTIES

1. Plaintiff Brandon Kolln is an individual and resident of Canadian County, Oklahoma.

2. Upon information and belief, Defendant Rail Barge Truck Services, Inc. ("RBT") is a Kentucky corporation with its principal place of business located at 218 Corporate Drive, Elizabethtown, Kentucky, 42701 and may be served with process by mailing a copy of the Petition and Summons to its principal place of business at 218 Corporate Drive, Elizabethtown, Kentucky, 42701.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this controversy pursuant to 21 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in dispute exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the Western District of Oklahoma because a substantial part of the acts and/or omissions giving rise to this action occurred in Canadian County, Oklahoma.

5. This Court has jurisdiction over the Defendant because the Defendant sells its products to a wide variety of clients across the country, which resulted in use of its products in Oklahoma, and as such the Defendant benefited from the laws of Oklahoma and either knows or reasonably anticipates that those activities would cause the Defendant to be subject to this Court's jurisdiction.

## III. FACTS

6. RBT designed, manufactured, marketed, and sold a Load Master Model 4255 ("Load Master") to Northern Ag Service, Inc. ("Northern Ag"), employer of Kolln.

7. The Load Master is a machine used to transport materials.

8. Northern Ag, through Kolln, used the Load Master for transporting fracking sand from a railroad car to a transportation truck.

9. On or about January 8, 2014, Kolln was opening a railroad car containing fracking sand for transport and fell onto the conveyor belt of the Load Master (the "Fall").

10. During the Fall, Kolln was pulled into the enclosed metal chute (the "Chute"), causing him to sustain serious bodily injuries.

11. During the Fall, Kolln traveled approximately three-fourths of the way up the conveyor belt and the Chute before another employee turned off the Load Master.

12. Following the Fall, local firefighters responded and extracted Kolln from the Chute.

13. As a direct and proximate result of the Fall, Kolln suffered and will continue to suffer grave physical and emotional harm.

14. The physical injuries sustained by Kolln as a direct and proximate result of his Fall include, but are not limited to, a sternum fracture, several rib fractures, a shoulder fracture and dislocation, joint separation in the shoulder, hip dislocation and injury, facial lacerations, a collapsed lung, multiple internal contusions, fractured toes, nail bed injuries, fractured teeth, and closed head injury.

15. As a direct and proximate result of the Fall, Kolln is currently under continuous nursing care.

16. As a direct and proximate result of the Fall, Kolln has suffered irreparable emotional distress.

17. As a direct and proximate result of the Fall, Kolln is and will continue to be unable to return to the state of physical and emotional health he maintained prior to the Fall.

### IV. FIRST CLAIM FOR RELIEF
### (NEGLIGENT DESIGN)

18. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

19. RBT had a duty to exercise ordinary care in the design, manufacture, marketing, and sale of the Load Master into the stream of commerce to ensure that the Load Master was safe for its intended and/or reasonably foreseeable use.

20. RBT failed to exercise ordinary care in the design, manufacture, marketing, or sale of the Load Master into interstate commerce in that RBT knew or should have known that the Load Master created a high risk of injury. More specifically, but without limitation:

   a. By designing, fabricating, manufacturing, producing, importing, distributing, selling, supplying, leasing, marketing, advertising or otherwise placing a defective and unreasonably unsafe product into the stream of commerce, RBT was negligent. Specifically, RBT placed into the stream of commerce the Load Master, which requires hand-on users during its operation and lacked any safety measures to prevent serious injury if a user fell onto the conveyor belt during operation.

   b. By failing to adequately inspect, examine, and test said product in reasonably foreseeable uses and circumstances, such as the attachment of the Load Master to a rail car and the transfer of material from the rail car to a vehicle, RBT was negligent.

   c. By allowing an unreasonably unsafe condition to exist on said product, RBT was negligent.

   d. By failing to prevent foreseeable injuries resulting from use of the said product, including but not limited to a person who fell onto the Load

Master's conveyor belt being pulled into the metal chute before the Load Master could be shut off, RBT was negligent.

e. By failing to meet applicable standards of care and by breaching duties owed with regard to said product, RBT was negligent.

21. Kolln has suffered grave injuries and harm as a direct and proximate result of the carelessness and negligence of RBT.

## V. SECOND CLAIM FOR RELIEF
## (PRODUCT LIABILITY)

22. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

23. RBT designed, fabricated, manufactured, produced, assembled, imported, distributed, sold, leased, supplied, marketed, advertised, or otherwise placed the Load Master into the stream of commerce.

24. RBT was in the business of designing, fabricating, manufacturing, producing, importing, distributing, selling, supplying, leasing, marketing, advertising or otherwise placing into the stream of commerce the Load Master.

25. The Load Master was defective and because of the defect the Load Master was unreasonably dangerous to a person who buys, uses, or might be reasonably expected to be affected by the Load Master. The Load Master was dangerous to an extent beyond which would be contemplated by the ordinary user with ordinary knowledge. The Load Master was unreasonably dangerous, even when used for its intended purpose. The Load Master was defective and unreasonably dangerous because RBT failed to:

a. adequately instruct and warn with regard to safe use, proper operation, proper assembly, maintenance, and the failures and dangers of the Load Master in reasonably foreseeable uses and circumstances, including but not limited to the precautions necessary to prevent a user of the Load Master from falling onto the conveyor belt and, under those circumstances, how to prevent such a person from traveling up the conveyor belt, being pulled into the metal chute, and sustaining serious injuries.

b. adequately study available design criteria, including design options that incorporated safety features such as a kill switch, and foreseeable failure modes.

c. equip the Load Master with proper safety features that would serve to prevent reasonably foreseeable harm, including but not limited to the inclusion of a kill switch, railing, and/or an automatic opening mechanism.

26. The Load Master was defective at the time it was placed into the stream of commerce by RBT or left its respective control because it was not reasonably fit for the ordinary and foreseeable purposes for which such products are intended or may reasonable be expected to be used. More specifically, the Load Master was not reasonably fit for persons to be connecting the conveyor belt to a rail car in order to transfer fracking sand from that rail car and into a vehicle.

27. Kolln was a person who used or might have reasonably been affected by the Load Master, as he was an employee hired to operate the Load Master and utilize the same to transfer materials from a railroad car to a vehicle.

28. Kolln has suffered grave injuries and harm as a direct and proximate result of defects in RBT's product, including being pulled into the metal chute and carried three-fourths of the way up the conveyor belt before the Load Master could be turned off, for which RBT is strictly liable under the doctrine of Manufacturers Product Liability.

29. As a result of the acts and/or omissions of RBT, Kolln has endured pain and suffering, extreme emotional distress, mental anguish, impairment, disfigurement, loss of consortium, interference with his daily activities, and a reduced capacity to enjoy life in the past and, in all likelihood, into the future due to his injuries.

30. As a result of the acts and/or omissions of RBT, Kolln has suffered lost wages, and will continue to suffer lost wages or a diminished earning capacity in the future, as a result of his injuries.

31. As a result of the acts and/or omissions of RBT, Kolln has become and will continue to become obligated to pay reasonable and necessary medical expenses as a result of his injuries.

32. As a result of the injury and harm, Kolln has and will be damaged in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff prays judgment in the amounts recited above, plus costs, interest, attorney's fees and such other relief as the court may deem proper.

Respectfully submitted,

**PHILLIPS MURRAH P.C.**

*/s/ Thomas G. Wolfe*
Thomas G. Wolfe, OBA #11576
Fred A. Leibrock, OBA #14146
Elizabeth A. Mobley, OBA #31615
Corporate Tower, Thirteenth Floor
101 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133

and


*/s/ Joshua J. Blair*
Joshua J. Blair, OBA #21605
Clemens & Blair
128 W. Hefner Road
Oklahoma City, OK 73114
Telephone: (405) 478-0058
Facsimile: (405) 478-0296

**ATTORNEYS FOR PLAINTIFF,
BRANDON KOLLN**

**JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED**